UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID BOGGS and JANICE BOGGS,
f/k/a JANICE PATTERSON ,

     Plaintiffs,

                                 CASE NO.:

-vs-

NAVIENT SOLUTIONS, INC.
f/k/a SALLIE MAE,

     Defendant.

_____/

## **COMPLAINT**

     COME NOW the Plaintiffs, DAVID BOGGS and JANICE BOGGS f/k/a JANICE PATTERSON, by and through undersigned counsel, and hereby sues the Defendant, NAVIENT SOLUTIONS, INC. f/k/a Sallie Mae ("NAVIENT"), and in support thereof respectfully alleges the following:

1.    Plaintiffs allege violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA") and the Florida Consumer Collections Practices Act, Chapter 559, *et seq.* ("FCCPA").

## **INTRODUCTION**

2.    The TCPA was enacted to prevent companies like NAVIENT from invading American citizen's privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

7.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).  See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.      Venue is proper in this District because the Plaintiffs reside in this District (Middle District of Florida), the phone calls were received in this District, and the Defendant transacts business in this District.

### FACTUAL ALLEGATIONS

10.     Plaintiff DAVID BOGGS is a natural person, and citizen of the State of Florida, residing in Hillsborough County, Florida, and resides in this District.

11.     Plaintiff JANICE BOGGS f/k/a JANICE PATTERSON ("JANCIE BOGGS") is a natural person, and citizen of the State of Florida, residing in Hillsborough County, Florida, and resides in this District.

12.     Plaintiff DAVID BOGGS and Plaintiff JANICE BOGGS are husband and wife.

13.     Plaintiffs are "consumers" as defined in Florida Statute §559.55(2).

14.     Defendant is a "debt collector" as defined by Florida Statute §559.55(6).  Defendant sought to collect a debt from Plaintiffs.

15.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(1).

16.     Defendant is Delaware corporation with a principal place of business and/or office for transacting its business located at 2001 Edmund Halley Drive, Reston, Virginia 20191 and conducts business in the State of Florida.

17.     The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, by the Defendant's placing of illegal calls to Plaintiffs while they resided in the State of Florida.

18.     Defendant has a Registered Agent in the State of Florida at Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

19.     Defendant, at all material times, was attempting to collect on a student loan debt (hereinafter the "subject account"), which was issued and serviced by Defendant.

20.     In approximately 2010, unbeknownst to either of the Plaintiffs, Jessica Boggs ("Jessica") (the daughter of Plaintiff DAVID BOGGS), took out a student loan and fraudulently signed her father's name to the loan papers.

21.     Upon information and belief, the student loan was initially with Direct Loans and was subsequently transferred to Sallie Mae.  Sallie Mae subsequently became NAVIENT SOLUTIONS, INC.

22.     In approximately 2011, when Jessica failed to make payments on the student loan, Direct Loans contacted the Plaintiffs via correspondence and phone calls and demanded payment from Plaintiff DAVID BOGGS.

23.     Plaintiffs explained to Direct Loans that Plaintiff DAVID BOGGS did not sign the loan and it was not his debt.  A short while later, Plaintiffs discovered that Jessica had unlawfully used DAVID BOGGS' social security number and W-2 information to obtain the student loan.  Plaintiffs obtained a police report and other documents regarding the fraud perpetrated by Jessica and provided a copy of those documents to Direct Loans.  Direct Loans ceased its harassment of the Plaintiffs.

24.     In approximately 2013, the student loan was transferred or sold to Sallie Mae.  Sallie Mae began to bombard the Plaintiffs with debt collection telephone calls to Plaintiff's cell phone number and sent debt collection letter to Plaintiffs' home.  Plaintiffs advised Sallie Mae that the debt was not owed by Plaintiff DAVID BOGGS and provided Sallie Mae with the police report and other

documents regarding the fraud perpetrated by Jessica.  Plaintiffs also told Sallie Mae to stop calling their cellular telephone number.

25.     Despite being provided with documents showing that Plaintiff DAVID BOGGS did not owe the debt and despite being told to stop calling, Sallie Mae continued to bombard the Plaintiffs with harassing telephone calls.

26.     In approximately January of 2014, Sallie Mae became NAVIENT.  Very shortly thereafter, Defendant NAVIENT began bombarding Plaintiffs with debt collection correspondence and harassing telephone calls to Plaintiff's cellular telephone.  Plaintiffs explained to NAVIENT, as they had explained to Direct Loans and Sallie Mae, that DAVID BOGGS' daughter had fraudulently signed her father's name to the loan and that the debt was not owed by Plaintiff DAVID BOGGS.  Plaintiffs provided NAVIENT with the police report and other documents regarding the fraud perpetrated by Jessica.  Plaintiffs also told NAVIENT to stop calling their cellular telephone number.

27.     Despite being provided with documents showing that Plaintiff DAVID BOGGS did not owe the debt and despite being told to stop calling, NAVIENT continued to bombard the Plaintiffs with harassing telephone calls.

28.     Defendant NAVIENT knowingly and/or willfully harassed and abused Plaintiffs on numerous occasions by calling Plaintiff JANICE BOGGS' cellular telephone number up to three (3) times a day from approximately January 1, 2013 through August 2015 with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account. Plaintiffs received approximately 300 telephone calls to their cellular phone from NAVIENT between January 2014 and August 2015.

5

29.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff JANICE BOGGS' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

30.     Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

31.     On or about January 1, 2013, Plaintiffs requested Defendant to stop calling therefore revoking any previously given express consent to be called using an ATDS, Predictive Dialer, pre-recorded message or artificial voice.  Plaintiff JANICE BOGGS told the Defendant: "You know that my husband's daughter took out this loan. We are tired of being call.  Stop calling."  Plaintiff DAVID BOGGS also told the Defendant to "Stop calling."

32.     Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number after January 1, 2013 were done so after Plaintiffs had revoked consent and without the "express consent" of the Plaintiffs.

33.     Plaintiff JANCIE BOGGS is the subscriber, regular user and carrier of the cellular telephone number, (813) *** - 3400.  Plaintiff DAVID BOGGS and JANICE BOGGS were the called parties and recipients of Defendant's autodialer calls.

34.     The autodialer calls from Defendant came from the telephone numbers including but not limited to 888-913-7654 and 703-763-0079 and when those numbers are called, an automated voice answers and identifies itself as "Thank you for calling Navient Department of Education Loan Servicing.  This call may be monitored or recorded."

35.     Despite Plaintiffs informing Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

36.     The autodialer calls from Defendant continued, on average, three (3) times a day from January 1, 2013 through August 2015. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiffs.

37.     The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number.

38.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond January 1, 2013, when Plaintiffs first advised Defendant to stop calling. While Plaintiffs were not able to keep track of every single call, below is a sampling of the calls that they received from NAVIENT:

    a. 05-20-15 at 12:15 p.m. from 888-913-7654

    b. 05-22-15 at 12:57 p.m. from 888-913-7654

    c. 05-27-15 at 11:27 a.m. from 888-913-7654

    d. 05-29-15 at 11:34 a.m. from 888-913-7654

    e. 06-05-15 at 11:32 a.m. from 888-913-7654

    f. 06-28-15 at 08:21 p.m. from 888-913-7654

    g. 07-07-15 at 10:28 a.m. from 607-235-5092

    h. 07-09-15 at 10:22 a.m. from 607-235-5092

    i.  07-11-15 at 12:39 p.m. from 888-913-7654

7

j. 07-12-15 at 03:03 p.m. from 888-913-7654

k. 07-16-15 at 12:57 p.m. from 703-763-0079

l. 07-19-15 at 3:22 p.m. from 888-913-7654

m. 07-19-15 at 4:28 p.m. from 888-913-7654

n. 07-20-15 at 12:52 p.m. from 703-763-0079

o. 07-23-15 at 12:41 p.m. from 703-763-0079

p. 07-24-15 at 1:04 p.m. from 703-763-0079

39.     Defendant's corporate policy is structured as to continue to call individuals like the Plaintiffs, despite the individuals, like Plaintiffs, advising Defendant to stop calling.

40.     Defendant's corporate policy provided no means for the Plaintiffs to have their cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiffs.

41.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

42.     Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call people who have revoked consent to be called.

43.     Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

44.     Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiffs' cellular telephone.

**COUNT I**
**(Violation of the TCPA)**

8

45.     Plaintiffs re-allege and incorporate Paragraphs one (1) through forty-four (44) above as if fully stated herein.

46.     None of Defendant's autodialer calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

47.     Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiffs' cellular telephone number after Plaintiffs revoked consent to be called and without Plaintiffs' express consent.

48.     The Defendant willfully and/or knowingly violated the TCPA, underline especially for each of the autodialer calls made to Plaintiffs' cellular telephone after Plaintiffs notified Defendant on or about January 1, 2014, when Plaintiffs verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact the Plaintiffs, and told Defendant to stop calling the Plaintiffs.

49.     Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NAVIENT SOLUTIONS, INC. for statutory damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

50.     Plaintiffs incorporates Paragraphs one (1) through forty-four (44) above as if fully set forth herein.

51.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

52.     Defendant violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or his family. Defendant continued to call Plaintiffs without Plaintiffs' prior express consent and after Plaintiffs informed Defendant to stop calling. Defendant called Plaintiffs almost daily which is a frequency that can be reasonably expected to harass.  The calls continue through the filing of this complaint.

53.     Defendant's actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute §559.77.

        **WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NAVIENT SOLUTIONS, INC., for statutory damages, punitive damages, actual damages, treble damages, costs, interest, and any other such relief the court may deem just and proper.

                        Respectfully submitted,

                         */s/ Octavio Gomez*
                        Octavio "Tav" Gomez, Esquire
                        Morgan & Morgan, Tampa,  P.A.
                        201 N. Franklin Street, 7th Floor
                        Tampa, FL 33602
                        Tele:  (813) 223-5505
                        Fax:  (813) 222-4725
                        Florida Bar #:  338620
                        Attorney for Plaintiff
                        TGomez@ForThePeople.com